UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN AFSCME
COUNCIL 25, et al.,

    Plaintiffs,

vs.

MICHAEL J. TALBOT, JR., et al.,

    Defendants.
_____/

Case No. 14-CV-10947

HON. MARK A. GOLDSMITH

## OPINION AND ORDER
## DENYING PLAINTIFFS' MOTION
## FOR TEMPORARY RESTRAINING ORDER (Dkt. 2)

### I. INTRODUCTION

On March 3, 2014, Plaintiffs, Michigan AFSCME Council 25, an unincorporated labor association, its affiliate Local 917, and three individual members of Local 917 filed the instant lawsuit. The individual Plaintiffs are court officers at the 36th District Court in Detroit. Defendants are: (i) the Honorable Michael J. Talbot, a judge of the Michigan Court of Appeals and the Special Judicial Administrator to the 36th District Court appointed by the Michigan Supreme Court, and (ii) the Honorable Nancy Blount, the Chief Judge of the 36th District Court. Plaintiffs assert in a one-count complaint that Defendants have unilaterally decided to convert the individual Plaintiffs' status as court officers from employees to independent contractors. Plaintiffs allege that this decision violates their procedural due process rights under the Fourteenth Amendment and is actionable under 42 U.S.C. § 1983. Before the Court is Plaintiff's motion for a temporary restraining order ("TRO") and a preliminary injunction (Dkt. 2). The matter is fully briefed and oral argument was held on March 10, 2014. For the reasons that

follow, the Court denies the motion.

## II. BACKGROUND[1]

Plaintiffs AFSCME Council 25 and Local 917 entered into a collective bargaining agreement ("CBA") with the 36th District Court for the 36th District Court's bailiffs and court officers on July 1, 2003.[2] CBA (Dkt. 12). It is unclear when the CBA expired, due to conflicting evidence in the record. The CBA expired either on June 30, 2006, by the CBA's terms, id. at Art. 27, or in 2009, after an extension. Compl. ¶ 16 (Dkt. 1); Robert Davis Aff. ¶ 4 (Dkt. 2-2). Since its expiration, the CBA has not been renewed, although it appears that the parties have continued negotiations for its renewal. Davis Aff. ¶ 5.

Nevertheless, a few provisions of the CBA are relevant to the pending motion. For instance, Article 10 of the CBA provides for certain management rights:

> It is understood and agreed by the parties that the Employer possesses the sole and exclusive duty and right to operate and manage the Court, its Division/Departments, and programs and carry out constitutional, statutory and administrative policy mandates and goals. The powers, authority and discretion of the Employer to exercise its rights and carry out its responsibilities shall be limited only by the specific and express terms of this Agreement and applicable statutes and court rules.

CBA at Art. 10.

Another relevant portion of the CBA is Article 12, which provides a disciplinary procedure for employees. Article 12 states that "[d]isciplinary action including discharge shall be imposed only for just cause, which includes, but is not limited to, misfeasance or malfeasance." Id. at Art. 12, § 1(A).

---

[1] The facts are taken from Plaintiffs' complaint and the attachments to Plaintiffs' motion and Defendants' response.

[2] Upon filing the instant motion, Plaintiffs' counsel failed to attach relevant exhibits cited in the motion, including the CBA. At the hearing on the motion, the exhibits were provided to the Court. The Court has docketed the relevant portions of the exhibits itself (Dkt. 12) and cites to that docket entry.

In addition to the CBA, Defendants attached to their response brief an affidavit sworn to by Judge Talbot. Talbot Aff. (Dkt. 7-3). According to the affidavit, Judge Talbot was appointed by the Michigan Supreme Court to reorganize the 36th District Court due to the court's fiscal and administrative problems. Id. ¶¶ 3-4. The 36th District Court's employment of court officers as public employees is an unusual circumstance, in contrast to the prevalent practice of most other courts in Michigan, which retain the officers as independent contractors. Id. ¶¶ 19-20. Judge Talbot believed that transforming the court officers from employees to independent contractors would save the court money and promote the operational reorganization he was tasked to effectuate. Id. ¶¶ 20-21.

Defendants sent Plaintiffs letters, informing them of the imminent change to independent contractor status. See, e.g., 7/26/13 Letter (Dkt. 7-4). Plaintiffs responded by filing an unfair labor practice charge with the Michigan Employment Relations Commission ("MERC") in October 2013. MERC Charge (Dkt. 7-5).

With the MERC proceedings on-going, Plaintiffs filed the instant § 1983 action, asserting in a one-count complaint that Defendants' decision to convert court officers to independent contractors violated the individual Plaintiffs' procedural due process rights under the Fourteenth Amendment.[3] Plaintiffs then filed the instant motion for TRO and preliminary injunction. In support of the motion, Plaintiffs attached an affidavit of Robert Davis, a staff representative of AFSCME Council 25, who states that the conversion of the individual Plaintiffs from employees to independent contractors will result in the loss of employer-provided health insurance and other benefits. Davis Aff. ¶¶ 12, 14.

---

[3] The union-Plaintiffs do not assert an independent claim. Instead, according to the complaint, AFSCME Council 25 asserts "associational standing" on behalf of its members and its own standing as a party to the CBA. Compl. ¶ 2. Local 917 does not appear to assert a claim.

3

## III. ANALYSIS

Plaintiffs argue that, by virtue of the CBA and the conduct of their employer, they have a cognizable property interest in their continued employment. Defendants respond by making essentially two arguments: (i) Plaintiffs lack such a cognizable property interest and (ii) two federal abstention doctrines require the Court to avoid ruling on the case. Upon review of the parties' arguments, the Court first considers Defendants' abstention arguments because a finding that abstention applies would be dispositive of the entire case. Concluding that a decision regarding abstention would be premature, the Court then addresses and rejects Plaintiffs' request for a TRO because Plaintiffs are not likely to succeed on the merits of their claim.

### A. Abstention

Defendants assert that the Court should abstain from the case under the abstention doctrines of the eponymous U.S. Supreme Court cases Burford v. Sun Oil Company, 319 U.S. 315 (1943), and Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Defs. Resp. at 9-13. Plaintiffs argue that neither doctrine is applicable. Specifically, Plaintiffs claim that their "constitutionally protected interest" cannot be adjudicated before MERC, rendering Burford abstention inapplicable. Reply at 7. Plaintiffs also maintain that their cause of action presents a different legal issue from that being addressed before MERC, making Colorado River abstention inapplicable. Id.

The Court recognizes that it has a "virtually unflagging obligation" to exercise its jurisdiction, Colorado River, 424 U.S. at 817, and that when deciding whether to invoke abstention, a presumption operates in favor of retaining jurisdiction. PaineWebber v. Cohen, 276 F.3d 197, 207 (6th Cir. 2001) (stating that, under the multi-factor test of Colorado River, courts begin "with the balance heavily weighted in favor of the exercise of jurisdiction").

4

Whether Defendants have overcome that presumption cannot be comfortably determined at present, because the arguments are not sufficiently developed. For instance, the parties have not made clear to what extent Plaintiffs' unfair labor practice charge has progressed at MERC. The Court only has before it Plaintiffs' initial charge filed in October 2013 and Judge Talbot's affidavit, which was filed in that proceeding. Moreover, the briefing to date is not sufficiently thorough in light of the intricacies of the two doctrines. Rather than provide a potentially dispositive ruling based on the sparse briefing at this stage of the instant case, the Court will not address the merits of these arguments. Defendants are free to reassert and develop these arguments by motion at a later time.

**B. TRO/Injunction**

In the instant motion, Plaintiffs request a TRO and preliminary injunction. The "factors considered in ruling on a temporary restraining order mirror those on motions for a preliminary injunction and final injunctive relief." 11A Charles Alan Wright, Arthur Miller, et al., Federal Practice and Procedure § 2951 (3d ed. 1998); see also Singer Mgmt. Consultants v. Milgram, 650 F.3d 223, 236 n.4 (3d Cir. 2011) (explaining that TROs and preliminary injunctions "share nearly identical factors," but that a TRO differs because it dissolves automatically).

Injunctive relief "is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008). Such relief should be granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000).

The propriety of ordering such relief turns upon four well-established factors: (i) whether the movant has a strong likelihood of success on the merits; (ii) whether the movant would otherwise suffer irreparable injury; (iii) whether issuance of a preliminary injunction would cause substantial harm to others; and (iv) whether the public interest would be served by issuance of a preliminary injunction. Sandison v. Mich. High Sch. Athletic Ass'n, 64 F.3d 1026, 1030 (6th Cir. 1995). Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually dispositive of the motion. Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000).

### 1. Likelihood of Success on the Merits

The Court first considers whether Plaintiffs have demonstrated a likelihood of success on the merits and concludes that they have not. The weakness of Plaintiffs' argument stems from a misreading of two cases, upon which they rely for their asserted entitlement to a property interest in their continued employment status at the 36th District Court: Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555 (6th Cir. 2004) and Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). Pl. Br. at 8; Reply Br. at 6. Plaintiffs argue that, under Singfield and Loudermill, they have a property interest in continued employment afforded by the CBA. Pl. Br. at 8; Reply Br. at 6. Plaintiffs also state that the 36th District Court's conduct since 2009, essentially acting as if the CBA were in place, caused Plaintiffs to expect continued employment. Id. at 9. Plaintiffs assert that their "property interest stands with or without termination" and that "Defendants are acting to terminate Plaintiffs by changing their employment status." Reply Br. at 6.

In response, Defendants counter that the property rights invoked by Plaintiffs only relate to "deprivations due to loss of employment due to discipline." Defs. Br. at 6. According to

6

Defendants, this property right does not prevent an employer from changing its operations, which may cause an employee to lose his or her job. Id. The Court agrees.

In the public-employment context, courts have held that employees subject to termination under an operative CBA must be given proper notice and hearing. Singfield, 389 F.3d at 566 (housing authority plaintiff terminated under a CBA containing a "just cause" provision had a protectable property interest in his continued employment that was violated when he was not notified or given an explanation of the charges giving rise to his termination). See also Loudermill, 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. . . . To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.").

Importantly, the Singfield court held that the employee had a property right, entitled to procedural due process protection, prior to his termination because of his contract. Because protectable property interests are derived from state law, courts must discover such interests in a valid contract, state statute, or other "state law-rules or understandings." Singfield, 389 F.3d at 565. As the Supreme Court has stated, "property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Loudermill, 470 U.S. at 538 (quotation marks and citation omitted).

In the absence of an operative CBA, at least one court has held that expired CBAs do not grant public employees a property interest. Rodgers v. 36th Judicial Dist. Ct., No. 10-11799, 2011 WL 3714592, at *6 (E.D. Mich. Aug. 24, 2011). In Rodgers, terminated employees of the

7

36th District Court brought procedural due process claims. Some employees were terminated prior to the expiration of their CBA, while others were terminated after the CBA had expired. The court rejected the claims of the plaintiffs who were terminated <u>after</u> the CBA had expired, explaining that "an expired CBA cannot – of itself – serve as a source of protected property rights," and that the procedure under Michigan's Public Employee Relations Act ("PERA"), Mich. Comp. Laws § 423.01 <u>et</u> <u>seq.</u>, merely provided a process for bargaining. <u>Id.</u> Instead of property interests, all that the plaintiffs had was an expectation for procedural bargaining. <u>Id.</u> On appeal, the Sixth Circuit affirmed, holding that the district court did not err in concluding that "the CBA was the source of the plaintiffs' property interests," and that the plaintiffs "who were fired after the CBA terminated did not" have a property interest. <u>Rodgers v. 36th Dist. Ct.</u>, 529 F. App'x 642, 648 (6th Cir. 2013).

In light of the forgoing authorities, Plaintiffs' reliance on <u>Singfield</u> and <u>Loudermill</u> is misplaced. In those cases, public employees had operative CBAs, and under those agreements they were terminated without proper notice and hearing. Plaintiffs' case is plainly distinguishable because they lack an operative CBA.

It is distinguishable, as well, because the management decision at issue is not termination as a disciplinary matter, but a reorganization of the work force. No case cited by Plaintiffs recognizes any entitlement to continued employment in the same job status where the employer seeks to change its mode of operation. And nothing in the CBA would support such a theory. In fact, the "just cause" provision only applies to disciplinary matters, not work force reorganizations. <u>See</u> CBA, Art. 12, Sec. 1(A) ("Disciplinary action including discharge shall be imposed only for just cause . . . .").

8

As explained in the Rodgers district court opinion, what the individual Plaintiffs have in the absence of a CBA is an expectation for procedural bargaining. Rodgers, 2011 WL 3714592 at *6. Indeed, Plaintiffs allege various violations of PERA in relation to their due process claim, see Compl. ¶¶ 18, 22, 35, 45, but PERA only provides the process through which public employees and employers are bound to bargain collectively. See Mich. Comp. Laws § 423.215 (providing that a "public employer shall bargain collectively with the representatives of its employees" and that "to bargain collectively" includes meeting to "confer in good faith with respect to wages, hours, and other terms and conditions of employment").

Additionally, the sources addressing the possible existence of a cognizable property interest brought to the Court's attention by the parties – namely the CBA and the Michigan Court Rules – counsel against finding such a new and amorphous property interest as Plaintiffs claim. As Defendants note, Article 10 of the CBA provides for the management of the 36th District Court "to operate and manage" the court with discretion "limited only by the specific and express terms" of the CBA and applicable statutes and court rules. Plaintiffs have not informed the Court how this provision can be reconciled with their property interest claim. Plaintiffs have also failed to direct the Court to any other provision of the CBA, aside from the termination clause of Article 12, that would limit Defendants' ability to change the operation of the court. Upon review of the CBA, the Court concludes that Article 10 supports Defendants' position that the management of the 36th District Court has discretion to alter the court's operation, including the right to convert employees to contractors.

Lastly, although not raised by Defendants, the Court also questions the viability of any property interest on the facts of this case, where the office claimed by Plaintiffs is governed by statute. Under Michigan Court Rule 8.110(C)(3), the chief judge of a court has "administrative

9

superintending power" over a court's personnel, including the power to "discharge" personnel. Court officers, such as the individual Plaintiffs, are appointed by the chief judge for a period of two years. Mich. Ct. R. 3.106(c). "The appointing court must specify the nature of the court officer's employment relationship at the time of appointment." Id. Thus, after the expiration of the CBA and the individual Plaintiff's two-year terms, there does not appear to be any source of law that would displace the court rule's vesting of the 36th District Court's chief judge, Defendant Judge Blount, with the discretion to appoint and classify court officers. As "property interests are not created by the Constitution," but are created and defined "by existing rules or understandings that stem from an independent source such as state law," Loudermill, 470 U.S. at 538, the effect of the Michigan Court Rules further undermines Plaintiffs' claimed property right.

In light of Rodgers, the lack of apposite authority, the existence of an expired CBA, the presence of Article 10 in the expired CBA, and the procedure of reappointment afforded by Michigan Court Rules – all of which present distinct obstacles to Plaintiffs – the Court concludes that Plaintiffs have little likelihood of success on the merits to warrant the injunctive relief they seek.

### 2. Irreparable Injury

The irreparable injury factor requires that any harm to the plaintiff be "actual and imminent," and not "speculative or unsubstantiated." Abney v. Amgen, Inc., 443 F.3d 540, 552 (6th Cir. 2006). Plaintiffs assert that they will suffer irreparable injury by the conversion of their employment status. Pls. Br. at 10-11. Specifically, Plaintiffs claim that the conversion to independent contractors will result in the loss of wages, benefits, collective bargaining rights, public sector labor law protections, and "union representation and dues collections." Id. at 11.

The only evidence in the record in support of Plaintiffs' claim of irreparable harm is an affidavit of AFSCME Council 25 staff representative Robert Davis. Davis Aff. (Dkt. 2-2). Although Plaintiffs do not cite to his affidavit in their argument, Davis states that the conversion from employee to independent contractor status will result in the loss of employer-provided health insurance, and other benefits relating to pensions, insurance and bonding, and social security earned credits. Id. ¶ 12, 14. Defendants counter that Plaintiffs will not suffer irreparable harm because the individual Plaintiffs will be offered re-appointment, albeit as independent contractors. Defs. Br. at 14; 2/11/14 Letter (Dkt. 12).

Here, irreparable injury does not appear imminent. On one hand, there is evidence in the record, in the form of Davis' affidavit, that the individual Plaintiffs will lose health insurance and other benefits provided by the 36th District Court by being converted to independent contractors. However, there is also evidence in the record that the court will offer the individual Plaintiffs re-appointment as contractors, so that they will have continued employment. See 7/26/13 Letter (Dkt. 7-4). The record does not disclose what effect the conversion will have on the income of the individual Plaintiffs. The Court finds that the record contains insufficient evidence that the individual Plaintiffs would suffer irreparable harm by being converted to independent contractors.[4]

### 3. Harm to Others and the Public Interest

---

[4] Plaintiffs' primary case for irreparable injury, Golden v. Kelsey-Hayes Company, 73 F.3d 648 (6th Cir. 1996), is inapposite. In Golden, the Sixth Circuit held that retirees could suffer irreparable harm from modifications to their healthcare plans because the retirees could not easily absorb increases in their expenses due to their fixed incomes. Id. at 657. Our case does not involve retirees or fixed incomes. Moreover, with the enactment of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010), "collectively known as the Affordable Care Act," Eden Foods, Inc. v. Sebelius, 733 F.3d 626, 627 (6th Cir. 2013), new options have been made available for the acquisition of health insurance for those without employer-provided insurance.

With respect to the remaining two factors – harm to others and the public interest – Plaintiffs claim that no harm will come to others, and that the public interest will be served by the individual Plaintiffs' continued employment and vindication of their constitutional rights. Pl. Br. at 11-12. Defendants argue that harm will come to the 36th District Court because an injunction will halt the reorganization efforts by Judge Talbot. Defs. Br. at 14-15. Defendants also assert that the public interest will benefit from an orderly reorganization of the court. Id. at 15.

The arguments by both sides are unsupported and speculative with no citation of evidence or authority to support the conclusory arguments. However, based on the record before it, the Court finds that an immediate declaration in favor of Plaintiffs may harm the 36th District Court and Judge Talbot's efforts to reorganize it. Judge Talbot avers that one of the primary reasons for converting court officers to independent contractors is that a significant cost savings can be achieved for the financially distressed court. Talbot Aff. ¶ 20. Similarly, the Court finds that the public interest expressed by Plaintiffs is vague; and as Plaintiffs most likely cannot succeed on the merits of their claim, the public interest is not served by the vindication of constitutional rights that do not exist. Overstreet, 305 F.3d at 579 ( "[W]hile the public clearly has interest in vindicating constitutional rights, it is unlikely that [the plaintiff] can demonstrate that any constitutional rights are implicated on these facts.").

### 4. Weighing the Factors

In weighing the factors, the Court holds that Plaintiffs have failed to carry their burden of demonstrating the need for preliminary injunctive relief. The lack of likelihood of success on the merits and the speculative nature of the harm do not warrant Plaintiffs' request for a TRO and preliminary injunction. CLT Logistics v. River West Brands, 777 F. Supp. 2d 1052, 1064 (E.D.

Mich. 2011) ("Although the factors [for a TRO or preliminary injunction] are to be balanced, a finding that there is no likelihood of irreparable harm or no likelihood of success on the merits is usually fatal") (internal citations omitted).

## IV. CONCLUSION

For all the reasons stated above, Plaintiffs' motion (Dkt. 2) is denied.[5]

SO ORDERED.

Dated: March 24, 2014        s/Mark A. Goldsmith
     Flint, Michigan        MARK A. GOLDSMITH
                                    United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 24, 2014.

                                            s/Deborah J. Goltz
                                            DEBORAH J. GOLTZ
                                            Case Manager

---

[5] In their response, Defendants also request sanctions under 28 U.S.C. § 1927, arguing that Plaintiffs' counsel should not have filed this lawsuit. Defs. Br. at 15-16. Section 1927 provides that an attorney may be sanctioned for "multipl[ying] the proceedings in any case unreasonably and vexatiously." The Court declines to sanction Plaintiffs' counsel. The Sixth Circuit has explained that the standard for awarding sanctions under this statute requires something more than "[s]imple inadvertence or negligence that frustrates the trial judge." Ridder v. City of Springfield, 109 F.3d 288, 298 (6th Cir. 1997). The conduct of the attorney must fall "short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." Id. Here, Plaintiffs' counsel did not unreasonably multiply the proceedings. Plaintiffs have presented a colorable claim that is not frivolous or meritless, the motion practice has been minimal, and there is no evidence of abusive conduct, such as prolonged discovery that yielded no evidence. See id. (plaintiff pursued frivolous claims for five years without developing evidentiary support after full discovery).